Approved: _____
LINDSEY KEENAN
Assistant United States Attorney

Before:   HONORABLE JUDITH C. McCARTHY
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x   19 mag 8703

**COMPLAINT**

UNITED STATES OF AMERICA           :
                                       Violation of
          - v. -                   :   21 U.S.C. § 846

FERNANDO FUENTES-REYNA,            :   COUNTY OF OFFENSE:
                                       WESTCHESTER
          Defendant.               :

- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

John J. Kerwick, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

1. From at least on or about August 23, 2019 to on or about September 15, 2019, in the Southern District of New York and elsewhere, FERNANDO FUENTES-REYNA, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2. It was a part and an object of the conspiracy that FERNANDO FUENTES-REYNA, the defendant, would and did possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

3. The controlled substance that FERNANDO FUENTES-REYNA, the defendant, conspired to distribute and possess with intent to distribute was 1 kilogram or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846; Title 18, United States Code, Section 2).

The bases for my knowledge and the foregoing charges are, in part, as follows:

4. I am a Task Force Officer with the DEA, and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement officers and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. In or about August 2019, a cooperating witness ("CW-1")[1] informed me that he/she could arrange narcotics transactions with an individual in Mexico (the "Mexican Supplier"). Thereafter, CW-1 participated in a proffer session with the DEA. During the proffer, CW-1 stated, in substance and in part, that while he/she was incarcerated from 2010 to 2014 for drug offenses, he/she met an individual (the Mexican Supplier) who had been convicted of drug crimes. During their period of incarceration, the Mexican Supplier told CW-1 that he was involved with importing heroin and fentanyl into the United States from Mexico. The Mexican Supplier and CW-1 continued to communicate after their release from prison, and, prior to CW-

---

[1] CW-1 pleaded guilty to one count of participating in a conspiracy to distribute and possess with intent to distribute five kilograms and more of cocaine and one kilogram and more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) and 846. CW-1 is currently awaiting sentencing. CW-1 has been proffering with the Government in the hopes of either receiving a lower sentence or obtaining a cooperation agreement. CW-1 has provided additional information that has been corroborated by other sources.

2

1's 2017 arrest, the Mexican Supplier offered to supply CW-1 with controlled substances. CW-1 provided the DEA with the phone number for the wife of the Mexican Supplier ("Supplier Number-1"), and stated, in substance and in part, that the DEA could contact the Mexican Supplier using that number.

6. Based on my personal investigation of this matter, my review of recorded conversations, and my debriefing of a confidential informant ("CI-1"),[2] I know, among other things, the following:

a. In or about August 2019, the DEA provided Supplier Number-1 to CI-1. On or about August 23, 2019, at the direction of the DEA, CI-1 called Supplier Number-1. The call was recorded. A female answered the phone ("Female-1"), and CI-1 introduced himself/herself as a family member of CW-1. CI-1 then asked to speak with the Mexican Supplier. Female-1 responded that the Mexican Supplier was unavailable and that he would return the call at a later time.

b. Later that evening, a male individual I believe, based on my participation in this investigation, to be the Mexican Supplier, called CI-1 from Supplier Number-1. The call was recorded. CI-1 told the Mexican Supplier, in substance and in part, that he/she was CW-1's family member and that he/she was looking to do "work" with the Mexican Supplier. The Mexican Supplier responded, in substance and in part, that he would reach out to other individuals and call CI-1 in a couple days.

c. A few days later, on or about August 29, 2019, Female-1 contacted CI-1 from Supplier Number-1. Female-1 stated, in substance and in part, that she could provide CI-1 with "Chinese Food" and "White Paint." Based on my training and experience, I know that "Chinese Food" is commonly used as slang for fentanyl, and "White Paint" is commonly used as slang for cocaine. CI-1 responded to Female-1 that he/she was interested as long as the quality was good. Female-1 stated that she would pass on the message, and told CI-1 that she would pass CI-1 her husband's phone number.

---

[2] CI-1 has been cooperating with the DEA since 2000. Cl-1 has no arrest record. CI-1 has indicated that he is willing to testify and is cooperating for financial compensation. CI-1 has provided information in prior investigations and has proven reliable.

3

    d. Later the same day, CI-1 received a text message from Supplier Number-1 containing the phone number for an individual identified in part as "My Love" ("Supplier Number-2").

  7. Based on my participation in this investigation, my review of recorded calls, my conversations with CI-1 and other law enforcement officers who participated in this investigation, I have learned the following about a proposed narcotics transaction between the Mexican Supplier and CI-1:

    a. On or about September 15, 2019, CI-1 received a call from a male CI-1 believes to be the Mexican Supplier, who was using Supplier Number-1. The call was recorded. The Mexican Supplier stated, in substance and in part, that if CI-1 was available, he could introduce CI-1 to a Mexican contact in the Bronx, New York, who could provide a kilogram of a "nice and pure" substance at $45,000 a kilogram.

    b. Thereafter, the Mexican Supplier sent CI-1 a text message including a phone number ending in 6691 (the "6691 Phone"). The Mexican Supplier instructed CI-1, in substance and in part, to contact the 6691 Phone and state that he was calling "por primo de parte granjero."

    c. CI-1 contacted the 6691 Phone, introduced himself/herself as the Mexican Supplier instructed, and advised the individual using the 6691 Phone that he/she was in Yonkers, New York, and asked the individual using the 6691 Phone to meet him/her in Yonkers. The individual using the 6691 Phone stated that he did not have a car, and would meet CI-1 in Brooklyn, New York.

    d. At approximately 6:09 p.m., on September 15, 2019, the individual using the 6691 Phone sent CI-1 an address on 5th Avenue, in Brooklyn (the "5th Avenue Address").

    e. Later that evening, law enforcement transported CI-1 to Brooklyn. Upon arrival, CI-1 contacted the 6691 Phone. The individual using the 6691 Phone advised CI-1 that CI-1 would meet with "a guero" wearing a backpack. Based on my training and experience, and participation in this investigation, I believe a "guero" is a reference to a light-skinned person.

    f. Shortly thereafter, CI-1 received a call from a number ending in 8487 (the "8487 Phone"). The individual using the 8487 Phone stated in substance and in part that he did not want to keep waiting, and asked where CI-1 was.

    g. CI-1 exited the law-enforcement vehicle and walked to the corner near the 5th Avenue address, where he was met by a light skinned man, later identified as FERNANDO FUENTES-REYNA, the defendant. FUENTES-REYNA was wearing a backpack. I observed CI-1 and FUENTES-REYNA engage in a hand to hand transaction.

    h. CI-1 returned to the law enforcement vehicle and turned over a substance wrapped in saran wrap that he/she had obtained from FERNANDO FUENTES-REYNA, the defendant. The substance field-tested positive for the presence of heroin.

    i. CI-1 then called the Mexican Supplier, on Supplier Number-2, and stated in substance and in part, that the sample was good and strong, and he/she would take the kilogram. The call was recorded. The Mexican Supplier responded, in substance and in part, that he would make a call.

    j. CI-1 then called the 6691 Phone and stated, in substance and in part, that the quality was good and he/she wanted to complete the transaction.

    k. At approximately 9:45 p.m., CI-1 received a text message from the 6691 Phone, containing another address on West 8th Street in Brooklyn, New York (the "West 8th Street Address").

    l. Law enforcement transported CI-1 to the West 8th Street Address. Upon arrival, CI-1 contacted the 8487 Phone and stated in substance and in part that he/she was nearby the West 8th Street Address. The user of the 8487 Phone responded, in substance and in part, that he was four minutes away.

    m. CI-1 walked to the corner near the West 8th Street Address. I observed as FERNANDO FUENTES-REYNA, the defendant, approached CI-1. FUENTES-REYNA was wearing a backpack.

    n. Law enforcement approached FUENTES-REYNA and identified themselves. A search of FUENTES-REYNA's backpack revealed approximately a kilogram of a compressed, gray substance stored in cardboard box. The substance weighed

approximately 1012 grams, and field-tested positive for the presence of heroin.

      WHEREFORE, deponent prays that FERNANDO FUENTES-REYNA, the defendant, be imprisoned, or bailed, as the case may be.

_____
John J. Kerwick
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
16th day of September, 2019

_____
HONORABLE JUDITH C. McCARTHY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

6